**Bridget A. MOONEY, Appellee**

v.

**Donald D. DOUTT, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 20, 2000.
Filed Jan. 11, 2001.

**1272**

Zanita A. Zacks-Gabriel, Erie, for appellant.

Tina M. Fryling, Erie, for appellee.

Before POPOVICH, FORD ELLIOTT and BECK, JJ.

BECK, J.:

¶ 1 Using the Computed Allowance Minimum provision, Pa.R.C.P. 1910.16–3 of the support guidelines[1] for low income families, is the court required to fashion a child support order which leaves the obligor with a minimum net retained income of at least $550? We conclude the court is not.

¶ 2 Appellant Donald D. Doutt (father) claims that the hearing court incorrectly assessed his support obligations leaving him with less than $550 per month stipulated by the guidelines. Appellee Bridget A. Mooney (mother) argues that the support obligations were correctly calculated.

¶ 3 Father and mother, now divorced, have one minor child, J.D., born in 1997. Mother, who has primary custody, is employed at Perseus House in Erie, and has a net monthly income of $1455.46. Mother incurs expenses of $15.00 per day for child care. At the time of the hearing father was collecting unemployment compensation following his discharge from the Pennsylvania Department of Transportation on July 9, 1999. His gross weekly benefit was $181.00, netting him $100.00 after taxes and deductions for support were made. Unemployment compensation was due to end three weeks after the December 29, 1999 hearing. Father has a checkered employment history. He holds two college degrees, a Bachelor of Science in Secondary Education and a Bachelor of Arts in Criminal Justice. Father testified that he had applied for several jobs, and has had no positive response. He has not applied for a substitute teaching job because of personal preference and low pay. N.T., 12/29/99, at 3–14.

¶ 4 The hearing court decided, on the basis of father's qualifications, to assess father's monthly income at the level of minimum wage, which amounts to $725 per month. At the time of the hearing, father lived with his parents and had virtually no expenses for rent and food. Based on attributing a minimum wage income to father, the court ordered him to pay $170.29 a month in child support. The court also assessed the father for approximately one-third of the daycare expenses, ordering him to pay $63.17 per month.

---

1. The support guidelines applicable in this case, Pa.R.C.P.1910.16–1–7, became effective April 1, 1999.

Father's wages are to be attached at $175.00 per month, with the amount of support and daycare exceeding this amount to be added to arrears. This order leaves father with $550 per month, based on minimum wage earnings, and an arrears indebtedness.

¶ 5 Father raises six issues on appeal:

1. Whether the court erred in deeming minimum wage capability to him, rather than utilizing his actual income.

2. Whether the court erred in its application of the guidelines, imposing a support obligation that reduces his monthly income below the statutory minimum of $550 per month, by directing that amounts owed above that amount are to be added to arrears.

3. Whether the court erred in directing the domestic relations officer to calculate his obligations manually, rather than using the CAM calculations of the guidelines.

4. Whether the court erred by failing to pro-rate the level of support, since father's income falls between two levels of the guidelines.

5. Whether the court erred in charging him with daycare expenses, since he was willing and able to provide such services himself.

6. Whether the court erred in computation of the child care expenses by disregarding the federal child care tax credit referred to in Pa.R.C.P. 1910.16(A)(1).

¶ 6 We begin our review by noting that both parents are responsible for child support in accordance with their relative incomes and ability to pay. *Depp v. Holland*, 431 Pa.Super. 209, 636 A.2d 204 (1994). The amount of child support is largely within the discretion of the trial court, whose judgment should not be disturbed on appeal absent a showing of abuse of discretion. *Kessler v. Helmick*, 449 Pa.Super. 113, 672 A.2d 1380 (1996). Appellant acknowledges that the court has the ability to impute earning capacity to a party, so long as it is realistic and not theoretical. In determining a parent's ability to pay, the focus is on the person's earning capacity rather than on the person's actual earnings. *Neil v. Neil*, 731 A.2d 156 (Pa.Super.1999). Earning capacity is the amount the person could realistically earn under the circumstances, considering his age, health, mental and physical condition, and training. *Diehl v. Beaver*, 444 Pa.Super. 91, 663 A.2d 232 (1995). We find no abuse of discretion in the court's determination that a person with two college degrees and some work experience can obtain a job paying at least the minimum wage. We therefore find no error in computing father's obligations on minimum wage rather than his unemployment compensation.

¶ 7 Appellant argues that the guidelines establish a floor. The floor provides that he is entitled to retain a net amount of $550 per month and his child support obligation must be adjusted so that he retains this amount. He maintains the court violated this mandate when it made a charge against him for child care. He claims the child care charge, even as an arrearage debt, is not contemplated by the guidelines.

¶ 8 At trial, the court expressed the opinion that father should not have his monthly income reduced below the $550 level: "There is a limit as to what can be taken from Mr. Doutt's income as an amount of support. And it has been correctly stated that ... he has [to have] some monies left to live, the minimum amount of $550 a month." N.T., at 39. Shortly thereafter, the court stated, "[I]f the award of support leaves him less than $550, obviously, it has to be reduced to bring it to that amount." N.T., at 41. Counsel for father then argued that "the $550 minimum encompasses all those child care issues." N.T., at 43. Father's position is that monthly obligations which reduce his income below $550 should not be added to arrears, to be paid later, because the $550 reserved to him by the guidelines

has to include all of the obligations imposed on him. In contrast the court interpreted the guidelines to mean that $550 was the amount the obligor had to have in his pocket, but the balance could sit as an arrearage to be paid at a later time. N.T., 68a–71a.

¶ 9 As noted above appellant's income places him in the low income category. Therefore the amount of support he must pay is initially allocated according to the CAM guidelines Pa.R.C.P. 1910.16–1, Explanatory Comment C(3).

¶ 10 Rule 1910.16–2(e)(1)(A) provides:

**Net income Affecting Application of the Child Support Guidelines.**

(1) *Low Income Cases.*

(A) When the obligor's monthly income and corresponding number of children fall into the shaded area of the schedule set forth in Rule 1910.16–3, the basic child support obligation shall be calculated using the obligor's income only.... This amount is determined directly from the schedule in Rule 1910.16–3.

▮ ¶ 11 In our first step we are directed to utilize the CAM section of the guidelines. Once we arrive at the correct child support figure under the guidelines, we must determine if the figure is immutable or if the figure establishes only a rebuttable presumption.

¶ 12 The answer to this question is clear. Under CAM, the support amount from the guidelines establishes a rebuttable presumption that the amount is correct. Rule 1910.16–2(e)(1) and Explanatory Comment. Furthermore, in CAM cases the guidelines expressly permit either a deviation from the guideline amounts (1910 .16–5) or an add-on for an expense such as child support (1910.16–6). Explanatory Comment to 1910.16–2 makes clear these conclusions:

The CAM amount is only the presumptively correct amount of basic support to be awarded. If the circumstances warrant, the court may deviate under Rule 1910.16–5 and may also consider the party's contribution to the additional expenses, which are typically added to the basic amount of support under Rule 1910.16–6. If, for example, the obligor earns only $600 per month but is living with his or her parents ... the court may consider an upward deviation under Rule 1910.16–5(b)(3) and/or may order the party to contribute to the additional expenses under Rule 1910.16–6.

Pa.R.C.P.1910.16–2, Explanatory Comment—1998.

▮ ¶ 13 The guidelines recognize that in CAM cases "low-income obligors retain sufficient income to meet their basic needs and to maintain the incentive to continue working so that support can be paid." Rule 1910.16–1, Explanatory Comment—1998 C(3). Nevertheless, the guidelines clearly provide that the amount to be retained by the obligor from the guidelines schedule is not immutable, and the court must individualize its analysis on a case by case basis bearing in mind the rationale underlying the CAM schedule. In rare cases, the result may be that the obligor will retain less than $550 per month.

¶ 14 In this case, we reiterate that appellant lived with his parents, who provided most of his food and lodging. The court made an individualized evaluation of appellant's financial position. It permitted him to retain $550 per month and assigned the overage to arrears. In light of the explanation to the CAM provision of the guidelines permitting the court flexibility, the court did not abuse its discretion in directing that the overrage be assigned to arrears. The court explained its rationale for obligating the father for child care expenses. The court pointed out that the father was well educated and his future contained reasonable employment prospects. We underscore that where support awards do not follow the amount in the CAM schedule, the court must specify in writing the guideline amount of support and the factual underpinning justifying the deviation. Pa.R.C.P.1910.16–5(a).

¶ 15 We next consider appellant's third and fourth issues, since they both address the amount he is ordered to pay in basic child support, *i.e.* $170.29 per month. He argues that the court erred in directing the domestic relations officer to utilize a manual calculation of appellant's child support obligations. He argues that because the imputed income of $725 per month falls between two lines of the CAM chart, *i.e.*, $700 per month and $750 per month, his support obligation should have been pro-rated between the two figures. He states that what actually happened is that the court "bumped up" his obligation to the higher level of a $750 per month income, rather than pro-rating the difference. He also asserts that the court ordered the domestic relations office to make a calculation without relying on the CAM schedule.

¶ 16 Appellant offers no reference to the record or any affidavit to establish that the court ordered the domestic relations officer to calculate his monthly obligation without reference to the CAM chart. Included in his brief are Erie County documents consisting of a worksheet to establish the amount of support owed and a "support formula" form. Both use the CAM amount, along with calculations to establish the amount of child care owed by each parent. Neither of these documents supports his allegations that the CAM amount was disregarded in a manual calculation.

¶ 17 The imputed minimum wage earnings of $725 fall between two entries in the CAM chart in Rule 1910.16–3, *i.e.*, $700 and $750, which impose a monthly obligation (where there is one child) of $135 and $180 respectively. The court order sets appellant's monthly obligation at $170.29. Appellant is apparently arguing, although he does not state this explicitly, that his monthly obligation should be set at half of the difference between these two amounts, that is, at $135 (the obligation owed for a $700 per month income) plus $22.50 (half of the $45.00 additional amount owed where the monthly income is $750), for a total of $157.50. He argues his support obligation is $12.79 per month more than a pro rata calculation.

¶ 18 We do not agree that appellant's monthly obligation must be determined by a rigid, pro-rated calculation from the chart. The intervals in the income chart are set at $50 increments, but the obligor's obligations increase in varying amounts as income increases. Appellant's claim that he was "bumped up" to the $750 level of the chart is not correct. At $750 his monthly support obligation would have been set at $180, not $170.29. In the instant case, father has minimal expenses for his rent and food in his parents' household. We find no abuse of discretion in the basic award of $170.29 for child support. In light of the flexibility permitted under CAM, we consider the court's adjustment of $12.79 per month *de minimus*. Thus we conclude the court did not abuse its discretion.

¶ 19 The next issue raised by appellant is the award of day care expenses to mother. Appellant argues that he is willing and able to provide those services directly, and that he should not be charged with an obligation to contribute to mother's payments to a third party for these services. At trial, appellant stated that he was actively seeking employment, naming several places to which he had sent applications, and that he was on-call at International Protective Services. He also stated that his efforts at seeking employment were ongoing. N.T., at 34a–35a. We therefore agree with the hearing court that mother was under no obligation to utilize father's services for day care, bearing in mind that father could at any time be accepted for employment. If the child were placed temporarily in father's care, and father then became employed, mother would have to find alternative caregiving services. Mother testified that if she withdrew child from his present highly satisfactory day-care, it is unlikely that she could re-enroll him in the facility. We point out we would reach this same result if the gender roles were reversed in this

case. Our review is limited to ascertaining whether there is sufficient evidence to sustain the court's order and whether there has been an abuse of discretion. *Stredny v. Gray,* 353 Pa.Super. 376, 510 A.2d 359 (1986). We find no merit in this issue.

██ ¶ 20 Next appellant contends that the court erred in calculating child care expenses by disregarding the mandatory reduction reflecting the federal child care tax credit. He cites Pa.R.C.P.1910.16–6(a)(1). This section states that child care expenses shall be reduced by 25% to reflect the federal child care credit available to the custodial parent, whether or not the tax credit is actually claimed by that parent, up to a maximum annual cost of $2400 per year for one child. The next section, 1910.16–6(a)(2), states that the federal tax credit shall not be used to reduce the child care expenses subject to allocation between the parties if the custodial parent's gross income falls below $1200 for one child. The Explanatory Comment to the guidelines, at 1910.16–C(6), states: "The Rule also reflects the availability and limitations of the federal child care tax credit which can be claimed by the custodial parent."

¶ 21 Mother's income is $1455 per month. Although mother argues that this income places her "on the fringe of the child care tax credit," (appellee's brief, p. 11), her income level of $1455 is clearly above the $1200 cut-off stated in 1910.16–6(a)(2). We find that father is correct that the computation of child care reimbursement was erroneously calculated for the parties because it omitted the mandatory adjustments for the federal child care tax credit mandated by 1910.16–6(a)(1).

¶ 22 We remand for the court to recalculate mother's child care expenses reduced by the mandatory 25% for the federal child care credit and to reallocate the resulting child care expenses between the parties.

¶ 23 Order affirmed in part and reversed in part. Remanded for proceedings consistent with this opinion. Jurisdiction relinquished.