J-S38003-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| M.S.S. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| R.S. | |
| Appellant | No. 1285 MDA 2014 |

Appeal from the Order Entered on July 2, 2014
In the Court of Common Pleas of Cumberland County
Domestic Relations at No.: 974 Support 2012

BEFORE:  WECHT, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY WECHT, J.:                          **FILED JULY 17, 2015**

R.S. ("Father") appeals the July 2, 2014 order that set his child support obligation.  Because the record did not provide sufficient support for the trial court's award, we are constrained to vacate the order and remand for further proceedings.

A prior panel of this Court set forth the factual and procedural history of this case as follows:

> Father and [M.S.S. ("Mother")] were married in September 1989 and are the parents of four minor children.  The parties lived together until Father was arrested on February 25, [2009].  He has been incarcerated since that time.

> Father is entitled to receive monthly payments of $799.20 from a TIAA-CREF annuity that comes from Father's inheritance from his father.  From the time of his incarceration until approximately May 2012, Father directed TIAA-CREF to deposit these payments into the joint bank account that he shares with [Mother].  Mother used these funds to support herself and the parties' children.  However, when Mother told Father of her

intention to seek a divorce, Father instructed TIAA-CREF to stop the monthly deposits in the parties' joint account. Father had these funds deposited into his prison account until October or November 2012, at which time Father elected to stop receiving the payments.

Following Father's diversion of the annuity funds from their joint account, Mother filed a complaint seeking both spousal and child support. Initially, [Mother's] petition was denied because Father is incarcerated. Mother petitioned for a hearing *de novo*, at which both parties appeared *pro se* and testified. [Father appeared via telephone conference.] At the hearing, Father testified as to the amount of the monthly TIAA-CREF payments and his decision to "defer" them until a later time. Father also testified that he earns $7.68 per month in prison as a library clerk. Following the hearing, the hearing officer entered an interim order finding Father's income to be $799.20 (the amount of the TIAA-CREF payments), and setting Father's child support obligation to be $50.00 per month, with an additional payment of $5.00 toward arrears.[1] In the report and recommendation the master filed contemporaneously with the interim order, he recommended dismissing [Mother's] request for spousal support.

Mother retained counsel and filed exceptions, arguing, *inter alia*, that the master erred by determining Father's support obligation strictly on the support guidelines without taking into consideration the extraordinary circumstance of Father's incarceration, which eliminates his need for the TIAA-CREF income, and the fact that Mother has sole custody of the children, as Father is incarcerated. According to [Mother], these circumstances militate in favor of an upward deviation from the guideline support figure. . . . The trial court dismissed [Mother's] exceptions and made the hearing officer's interim order final.

_____

[1] The hearing officer based this amount upon the child support guidelines applicable at the time of the hearing, which provided for a basic child support amount of $50 for one child when the obligor's income was between $0 and $900. Pa.R.C.P. 1910.16-3 (2013). The hearing officer did not explain why he did not set the obligation at $65, which was the guideline amount for four children.

[M.S.S. v. R.S.], 1282 MDA 2013, slip op. at 1-3 (Pa. Super. March 12, 2014) (citations to record and footnote omitted).

This Court determined that the trial court failed to address and consider adequately Mother's request for an upward deviation, vacated the order, and remanded for consideration of the deviation. *Id.* at 5-6.

Following the remand, on June 11, 2014, the trial court heard arguments on Mother's exception. Mother argued that the factors listed in Pa.R.C.P. 1910.16-5(b) militated in favor of an upward deviation. Notes of Testimony ("N.T."), 6/11/2014, at 7-8. Essentially, Mother asserted that Father's needs are being met in prison and that because he has no expenses, his income should be used for the children. *Id.* at 8-9. Father responded that, because his income is below the self-support reserve, the guidelines provided for no support obligation. Moreover, Father asserted that Mother has all the assets from the marriage at her disposal. *Id.* at 11-12.

On July 2, 2014, the trial court accepted Mother's argument and issued an order that set Father's child support obligation at $200.00 per month and $5.00 per month on arrears. Contemporaneously, the trial court set forth its reasoning for the deviation in a memorandum opinion. On July 30, 2014, Father filed a *pro se* notice of appeal. On August 5, 2014, the trial court ordered Father to file a concise statement of errors complained of on appeal

pursuant to Pa.R.A.P. 1925(b). Father filed a timely concise statement.[2]

Instead of filing a Pa.R.A.P. 1925(a) opinion, the trial court relied upon its

July 2, 2014 memorandum opinion.

Father raises the following issues for our review:

A. Did the trial court err[] and/or abuse[] its discretion in determining that an annuity payment from inheritance was "income" and not a gift.

B. Did the trial court err[] and/or abuse[] its discretion when it calculated child support obligation of [Father] based upon "income" from the gift of an inheritance.

C. Whether the trial court erred and/or abused its discretion when it failed to consider the mandate of the self-sufficient reserve, and imposed a child support obligation when [Father] had either "no income" or "income" before the SSR.

D. Did the trial court err[] and/or abused[] its discretion by failing to follow the Pa.R.C.P. to inquire into the actual living expenses before ordering an upward deviation in the child support guidelines in a low income case.

E. Whether the trial court erred and/or abused its discretion in deviating upward, in a low or no income case, from $50.00 to $200.00 per month the child support obligation without any unusual guidelines determining that an inheritance [*sic*].

F. Did the trial court err and/or abuse its discretion by deviating from the support guidelines without considering the relative assets and liabilities of the parties as required by the rules.

_____

[2] Having been docketed on August 28, 2014, Father's concise statement appears facially untimely. However, Father's concise statement is dated August 12, 2014 and, giving Father the benefit of the prisoner mailbox rule, we deem it timely. ***See Copestakes v. Reichard-Copestakes***, 925 A.2d 874, 875 n.2 (Pa. Super. 2007).

G. Did the trial court err and/or abuse its discretion when the child support obligation was deviated upward based on income and on any finding of "special needs" as required by statute.

Father's Brief at 5-6.

Our standard of review of a child support order is well-settled:

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Kimock v. Jones*, 47 A.3d 850, 854 (Pa. Super. 2012).

"[T]he support guidelines set forth the amount of support which a spouse or parent should pay on the basis of both parties' net monthly incomes . . . and the number of persons being supported." Pa.R.C.P. 1910.16-1(a). There is a rebuttable presumption that the guideline amount of child support is the correct amount. Pa.R.C.P. 1910.16-1(d). Further, in low income cases, the guidelines provide for a self-support reserve so that a party has sufficient income for basic necessities. "When the obligor's monthly net income is $867 or less, the court may award support only after

consideration of the parties' actual financial resources and living expenses."

Pa.R.C.P. 1910.16-2(e)(1)(C).[3]

However, "a court generally has reasonable discretion to deviate from the guidelines if the record supports the deviation." ***Silver v. Pinskey***, 981 A.2d 284, 296 (Pa. Super. 2009). Rule 1910.16-5 addresses deviation from the guidelines as follows:

> **(a) Deviation.** If the amount of support deviates from the amount of support determined by the guidelines, the trier of fact shall specify, in writing or on the record, the guideline amount of support, and the reasons for, and findings of fact justifying, the amount of the deviation.
>
> *Note:* The deviation applies to the amount of the support obligation and not to the amount of income.
>
> **(b) Factors.** In deciding whether to deviate from the amount of support determined by the guidelines, the trier of fact shall consider:
>
> (1) unusual needs and unusual fixed obligations;
>
> (2) other support obligations of the parties;
>
> (3) other income in the household;
>
> (4) ages of the children;
>
> (5) the relative assets and liabilities of the parties;
>
> (6) medical expenses not covered by insurance;
>
> (7) standard of living of the parties and their children;

_____

[3] As of August 9, 2013, the self-support reserve was increased to $931. However, we cite the version of the rule that was in effect at the time of the hearing. Further, Father's annuity payment was less than either amount.

(8) in a spousal support or alimony *pendente lite* case, the duration of the marriage from the date of marriage to the date of final separation; and

(9) other relevant and appropriate factors, including the best interests of the child or children.

Pa.R.C.P. 1910.16-5.

With that background, we turn to Father's issues on appeal. In his first two issues, Father argues that the monthly amount that he receives is an inheritance or a gift, which is not considered income for purposes of support. Father's Brief at 10-13. However, although the hearing officer calculated a guideline amount of support based upon an income of $0 to $900, the trial court did not treat the payment as income and did not calculate a guideline amount of support based on the annuity payment as income to Father. Instead, the trial court used the payment in its consideration of a deviation pursuant to Rule 1910.16-5, under which, the trial court can consider other assets of the parties and other circumstances. Gifts may be considered by the trial court when determining whether to deviate from the guidelines. *Suzanne D. v. Stephen W.*, 65 A.3d 965, 970 (Pa. Super. 2013). Additionally, our Supreme Court has held that inheritances may be treated the same way. *Humphreys v. DeRoss*, 790 A.2d 281, 288 (Pa. 2002). Therefore, regardless of how Father's annuity payments are classified, the trial court could still consider the payments in deciding whether a deviation was appropriate.

Father's next two arguments involve the self-support reserve. Father argues that, because his income is less than the self-support reserve, the trial court should not have awarded child support to Mother. Father contends that he was not given the opportunity to present evidence regarding his needs and expenses. Father's Brief at 14-17.

To the extent that Father argues that the trial court could not consider that his basic needs are provided by the government, we disagree. When a party's living expenses of food and lodging are subsidized by another, it may be a consideration in determining a child support obligation. ***Mooney v. Doutt***, 766 A.2d 1271, 1274 (Pa. Super. 2001). Therefore, Father's incarceration and its effect on his expenses could be considered by the trial court.

Unfortunately, the record did not suffice to allow the trial court to engage in that consideration. The record before the hearing officer[4] is devoid of evidence regarding Father's "actual financial resources and living expenses." ***See*** Pa.R.C.P. 1910.16-2(e)(1)(C). There was testimony regarding both parties' income and Father's annuity payment. N.T. at 6, 13, 16. Additionally, Father questioned Mother about her monthly rent. N.T. at 22. Although the trial court is likely correct that Father's actual living

_____

[4] The June 11, 2014 proceeding before the trial court was solely for the purpose of arguing Mother's exceptions and, therefore, is not evidence. Even if it were evidence, there is no discussion of the parties' actual expenses.

- 8 -

expenses are minimal, there is no evidence other than the fact of Father's incarceration to support that conclusion. Additionally, Father indicated that his annuity payment is used for expenses. *See* N.T. at 15 (Father testifying that payment was "given our now for legal fees and things like that that I have incurred during my appeal process"), 18 (Father testifying that the annuity payment "is committed money. This is not a question of what is available to me. This money is committed to other places."). Therefore, there was insufficient evidence of record to support the trial court's decision to grant Mother's exception and order a deviation in Father's support obligation. We are constrained to vacate the July 2, 2014 order and remand so that the trial court can develop a record to allow it to consider the actual resources and expenses of the parties as well as Mother's request for a deviation.

Order vacated. Remand for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/2015

- 9 -